<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

UNITED STATES OF AMERICA

v.

GABRIEL PEREZ

Hon. Christine P. O'Hearn, U.S.D.J.
Crim No. 25-573 (CPO)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS THE INDICTMENT AND DISQUALIFY THE GOVERNMENT'S COUNSEL**

**CALCAGNI & KANEFSKY LLP**
Ray A. Mateo, Esq.
Emily Arezzi, Esq.
1085 Raymond Blvd., 18th Floor
Newark, New Jersey 07102
(862) 397-1796
rmateo@ck-litigation.com
earezzi@ck-litigation.com
*Attorneys for Defendant Gabriel Perez*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................... iii

DEFENDANT'S MOTION ...................................................................................... 1

PRELIMINARY STATEMENT................................................................................ 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ....................................... 3

ARGUMENT ........................................................................................................ 5

I.    CAPT. PEREZ'S MOTION FOR PRESERVATION WAS TIMELY AND COMPLIANT
      WITH RULE 12, AND IS OTHERWISE ENTITLED TO CONSIDERATION FOR
      GOOD CAUSE SHOWN ................................................................................ 5

      A.   LEGAL STANDARD ........................................................................... 6

      B.   CAPT. PEREZ'S MOTION FOR PRESERVATION WAS TIMELY ....................... 7

      C.   THERE IS GOOD CAUSE TO CONSIDER CAPT. PEREZ'S MOTION............. 10

           i.    Legitimate Explanations for Alleged Untimeliness...................... 11

           ii.   No Prejudice to the Government Due to Substantial Notice......................... 13

           iii.  Miscarriage of Justice and Public Confidence in Justice System will be
                 Undermined ...................................................................... 14

II.   CAPT. PEREZ IS ENTITLED TO DISMISSAL BECAUSE OF MS. HABBA'S DIRECT
      INVOLVEMENT................................................................................... 16

      A.   LEGAL STANDARD ........................................................................... 17

      B.   MS. HABBA'S INVOLVEMENT DID NOT PREDATE CAPT. PEREZ'S
           INDICTMENT................................................................................... 18

      C.   MS. HABBA'S INVOLVEMENT WAS NOT MERELY SPECULATIVE............ 20

III.  THE EXECUTIVE OFFICE STRUCTURE CANNOT RETROACTIVELY CURE MS.
      HABBA'S DISQUALIFICATION. ....................................................... 22

      A.   LEGAL STANDARD ........................................................................... 23

      B.   THE EXECUTIVE OFFICE CONFIGURATION SUFFERS FROM THE SAME DEFECTS AS MS. HABBA'S APPOINTMENT ..................................................... 24

IV.    IN-CAMERA REVIEW ...................................................................................... 30

V.    DISMISSAL WITH PREJUDICE ..................................................................... 31

CONCLUSION....................................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)...........................................................................................17, 32

*Gov't of Virgin Islands v. Fahie*,
419 F.3d 249 (3d Cir. 2005) ........................................................................... 32

*In re Grand Jury Subpoenas to Office of New York State Attorney General*,
2026 WL 60793 (N.D.N.Y. Jan. 8, 2026) .................................... 15, 16, 27, 28

*Marinello v. United States*,
23 F.4th 224 (3d Cir. 2022).............................................................................. 9

*United States v. Albertson*,
645 F.3d 191 (3d Cir. 2011) ........................................................................... 11

*United States v. Andrews*,
681 F.3d 509 (3d Cir. 2012)....................................................................... 11, 12

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) ........................................................................ 32

*United States v. Cardona*,
88 F.4th 69 (1st Cir. 2023) ............................................................................. 13

*United States v. Comey*,
2025 WL 3266932 (E.D. Va. Nov. 24, 2025)............................... 13, 14, 15, 16, 19, 27, 28, 30, 31

*United States v. Crooker*,
688 F.3d 1 (1st Cir. 2012) ............................................................................... 14

*United States v. Daniels*,
803 F.3d 335 (7th Cir. 2015) .......................................................................... 10

*United States v. Dennis*,
41 F.4th 732 (5th Cir. 2022)............................................................................ 10

*United States v. Desu*,
2020 WL 5630003 (D.N.J. Sept. 21, 2020) ..................................................... 6

*United States v. Desu*,
23 F.4th 224 (3d Cir. 2022)..................................................................... 8, 9, 12

*United States v. Easton*,
937 F.2d 160 (5th Cir. 1991) ................................................................. 17

*United States v. Garcia*,
2025 WL 2985284 (D. Nev. Oct. 23, 2025) ....................................... 15, 16

*United States v. Giraud*,
160 F.4th 390 (3d. Cir 2025) ................... 4, 6, 7, 9, 12, 15, 16, 22, 23, 24, 26, 29, 31, 32, 33

*United States v. Giraud*,
795 F. Supp. 3d 560 (D.N.J. 2025) ............... 3, 6, 7, 9, 11, 12, 15, 16, 17, 18, 19, 20, 22–33

*United States v. Hasting*,
461 U.S. 499 (1983) ........................................................................... 31

*United States v. Hoffman*,
2025 WL 2581936 (D.N.J. Sept. 5, 2025) ............................................. 8

*United States v. Jones*,
2025 WL 1683474 (3d Cir. June 16, 2025) ........................................... 8

*United States v. McDonald*,
2024 WL 4814887 (3d Cir. Nov. 18, 2024) .......................................... 12

*United States v. O'Brien*,
926 F.3d 57 (2d Cir. 2019) ................................................................... 6

*United States v. Patel*,
2024 WL 3937479 (D.N.J. Aug. 26, 2024) ............................................ 8

*United States v. Ramirez*,
2025 WL 3019248 (C.D. Cal. Oct. 28, 2025) ................................... 15, 16

*United States v. Rose*,
538 F.3d 175 (3d Cir. 2008) ................................................................ 12

*United States v. Sok*,
115 F.4th 251 (3d Cir. 2024) ............................... 7, 8, 9, 10, 11, 12, 14, 15

*United States v. Trump*,
740 F. Supp. 3d 1245 (S.D. Fla. 2024) ............................................... 19

*United States v. Walker*,
665 F.3d 212 (1st Cir. 2011) ............................................................... 13

*United States v. Webb*,
2024 WL 2134864 (W.D. Pa. May 13, 2024) ............................................ 10

*United States v. Williams*,
504 U.S. 36 (1992) .................................................................................... 14

*United States v. Wynn*,
2023 WL 5992371 (W.D. Pa. Sept. 15, 2023) .......................................... 14

**Statutes**

5 U.S.C. § 3345 ................................................................................... 25, 29

5 U.S.C. § 3347(a) .......................................................................... 23, 25, 29

5 U.S.C. § 3347(a)(1) ................................................................................ 25

5 U.S.C. § 3348(d)(1) ................................................................................ 29

5 U.S.C. § 3348(d)(2) ................................................................................ 29

18 U.S.C. § 1470 ..................................................................................... 3, 4

18 U.S.C. § 2422(b) ..................................................................................... 4

28 U.S.C. § 541(a) ..................................................................................... 23

28 U.S.C. § 543(a) ..................................................................................... 24

28 U.S.C. § 546 ........................................... 2, 22, 23, 27, 26, 27, 30, 32

28 U.S.C. § 546(a) ........................................................................... 3, 23, 27

28 U.S.C. § 546(b) ..................................................................................... 24

28 U.S.C. § 546(c) ............................................................................... 3, 27

28 U.S.C. § 546(c)(2) .................................................................................. 27

28 U.S.C. § 546(d) ............................................................................... 24, 27

28 U.S.C. § 509 ...................................................................................... 5, 24

28 U.S.C. § 510 ................................................................................. 5, 24, 25

28 U.S.C. § 515 ........................................................................................................... 25

28 U.S.C. § 515(a) ..................................................................................................... 24


**Other Authorities**

*About The Office*, United States Attorney's Office District of New Jersey,
   https://www.justice.gov/usao-nj/about (last visited Jan. 8, 2025) ..................................... 22, 26

Alina Habba (@alinahabba), X (Dec. 8, 2025, 1:46 PM),
   https://x.com/AlinaHabba/status/1998101999024550125?s=20 .................................................. 4

Attorney General Pamela Bondi, Office of the Attorney General, Order No. 6510-2025, (Dec. 8,
   2025) https://www.justice.gov/opa/media/1420361/dl. ........................................................... 5

*Brooklyn Man Sentenced to 121 Months in Prison for Conspiracy to Commit Child Sex
   Trafficking*, United States Attorney's Office District of New Jersey, DOJ (Nov. 24, 2025),
   https://www.justice.gov/usao-nj/pr/brooklyn-man-sentenced-121-months-prison-conspiracy-
   commit-child-sex-trafficking ....................................................................................... 21

Celine Castronuovo, *DOJ Defense of Top Prosecutors Tees Up Debate for Supreme Court*,
   Bloomberg, (Nov. 24, 2025, 7:33 PM) https://news.bloomberglaw.com/us-law-week/doj-
   defense-of-top-prosecutors-tees-up-debate-for-supreme-court ................................................ 17

*Guatemalan Man Who Was Unlawfully Residing in the United States Charged with Fraudulently
   Obtaining Custody of Unaccompanied Alien Children*, United States Attorney's Office District
   of New Jersey, DOJ (May 12, 2025), https://www.justice.gov/usao-nj/pr/guatemalan-man-
   who-was-unlawfully-residing-united-states-charged-fraudulently-obtaining ........................ 21

*Justice Department Announces Results of Operation Restore Justice: 205 Child Sex Abuse
   Offenders Arrested in FBI-Led Nationwide Crackdown, Including 5 in the District of New
   Jersey*, United States Attorney's Office District of New Jersey, DOJ (May 9, 2025),
   https://www.justice.gov/usao-nj/pr/justice-department-announces-results-operation-restore-
   justice-205-child-sex-abuse ....................................................................................... 21

*Middlesex County Man Charged with Transferring Obscene Material to a Minor*, United States
   Attorney's Office District of New Jersey, DOJ (Sept. 5, 2025), https://www.justice.gov/usao-
   nj/pr/middlesex-county-man-charged-transferring-obscene-material-minor .......................... 21

*Ocean County Man Charged with Traveling to a Foreign Place to Engage in Sexual Conduct
   with a Minor*, United States Attorney's Office District of New Jersey, (April 16, 2025)
   https://www.justice.gov/usao-nj/pr/ocean-county-man-charged-traveling-foreign-place-
   engage-sexual-conduct-minor ..................................................................................... 21

*Philadelphia County Man Charged with Child Exploitation Offenses*, United States Attorney's Office District of New Jersey, DOJ (Aug. 7, 2025), https://www.justice.gov/usao-nj/pr/philadelphia-county-man-charged-child-exploitation-offenses ...................................... 21

*Sussex County Woman and Texas Man Admit to Exploiting a Child and Producing Child Pornography*, United States Attorney's Office District of New Jersey, DOJ (May 28, 2025), https://www.justice.gov/usao-nj/pr/sussex-county-woman-and-texas-man-admit-exploiting-child-and-producing-child-pornography .................................................................................... 21

*Union County Teacher Charged with Possession of Child Pornography and Enticement of a Minor*, United States Attorney's Office District of New Jersey, DOJ (May 1, 2025), https://www.justice.gov/usao-nj/pr/union-county-teacher-charged-possession-child-pornography-and-enticement-minor ......................................................................................... 21

*Union County Teacher Sentenced to 275 Months in Prison for Producing Child Pornography*, United States Attorney's Office District of New Jersey, DOJ (Nov. 24, 2025), https://www.justice.gov/usao-nj/pr/union-county-teacher-sentenced-275-months-prison-producing-child-pornography ..................................................................................... 21

## <u>Rules</u>

Fed. R. Crim. P. 12 ................................................................. 5, 6, 7, 8, 9, 10, 11, 12, 13

Fed. R. Crim. P. 12(b)(3) ..................................................................... 5, 7, 9, 10

Fed. R. Crim. P. 52(a) ................................................................................. 17

## DEFENDANT'S MOTION

Defendant Gabriel Perez ("Capt. Perez"), through his undersigned counsel, respectfully submit this brief in support of his Motion to Dismiss the Indictment and Disqualify the Government's Counsel. For the reasons set forth below, the motion should be granted.

## PRELIMINARY STATEMENT

This case is exactly what the Third Circuit in *United States v. Giraud* cautioned against: a criminal prosecution by a United States Attorney whose authority has been disqualified, and whose involvement was neither ministerial nor attenuated.[1] Here, former Acting United States Attorney Alina Habba ("Ms. Habba") did not merely preside in name over this case; rather, she affirmatively participated in its prosecution—one involving allegations of child exploitation, a decorated United States Air Force Captain, and a multi-state undercover operation—by participating in the prosecution at critical stages as part of a broader enforcement agenda.

Indeed, this prosecution bears the unmistakable imprimatur of Ms. Habba's personal authority and priorities. Her repeated public statements and press releases touting the Office's pursuit of "child predators," combined with her execution of the Indictment in a high-profile case involving a military officer, demonstrate not passive supervision but active participation in and ownership of the charging decision. This is not a case in which a line Assistant United States Attorney acted independently under a neutral chain of command; it is a case in which the now-disqualified U.S. Attorney herself lent both her formal authority and her public voice to the prosecution.

Even after Ms. Habba was forced to resign, the issue of unlawful prosecutorial authority persists. Instead of initiating an appointment that would comply with the Federal Vacancies Reform

---

[1] As of this filing, no stay or appeal of the Third Circuit's order in *Giraud* has been filed. As such, the Third Circuit's ruling affirming District Court Judge Matthew W. Brann, U.S.D.J. stands as the prevailing law.

Act (FVRA) and 28 U.S.C. § 546, Attorney General Bondi issued an order that restructured the position of the United States Attorney for the district by vesting authority into a three-person "Executive Office" composed of attorneys that have not undergone the requisite Presidential Appointment and Senate confirmation process (the "PAS" process). This reorganization suffers from the same ailments as Ms. Habba's appointment, and it is a transparent attempt to bypass scrutiny by rebranding the same deficiencies under a different name. As of this filing, there is no United States Attorney, no Acting United States Attorney, and no statutory basis for the Executive Branch to continue prosecuting this case.

The prejudice against Capt. Perez is evident. The charging instrument itself was approved and signed by an official who lacked authority to act, and his continued prosecution is being overseen by an invalid Executive Office whose asserted authority is both structurally and temporally defective. The Government cannot cure these defects with reassurances that career prosecutors handled the day-to-day work or by reorganizing the Office's leadership structure while evading the PAS process entirely. As was recognized in the District Court *Giraud* opinion, where the defect goes to a defendant's "substantial rights" the error is not a harmless one that may merely be disregarded. The Constitution does not permit the Executive Branch to retroactively validate an indictment issued under the authority of an unlawfully empowered prosecutor, nor does it allow the Executive Branch to bypass the PAS appointment requirement, the FVRA's exclusivity rule, or § 546's 120-day limit through gamesmanship or relabeling.

In this case, a dismissal with prejudice is warranted, as the foundational requirement of lawful prosecutorial authority has been absent since the case's inception. Consequently, Capt. Perez has suffered substantial prejudice due to unnecessary and unconstitutional delays that amount to a violation of his due process rights. The Indictment has been rendered

unconstitutionally defective because it was issued under the direct involvement and authority of a now-disqualified United States Attorney, and now the ongoing prosecution is being carried out by an Executive Office lacking any lawful authority. Therefore, the Indictment must be dismissed with prejudice.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On February 24, 2025, the Honorable Justin T. Quinn, United States Magistrate Judge issued a Complaint charging Capt. Perez with attempted transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470. ECF No. 1. On March 3, 2025, John Giordano was appointed Interim United States Attorney for the District of New Jersey under 28 U.S.C. § 546(a). *United States v. Giraud*, 795 F. Supp. 3d 560, 604 (D.N.J. 2025). Mr. Giordano was replacing Vikas Khanna, who, as the First Assistant United States Attorney, assumed the role of Acting United States Attorney following Philip R. Sellinger's resignation, the then-United States Attorney for the district appointed under the Biden administration. *Id.* at 568. On March 24, 2025, President Trump announced that Ms. Habba would be appointed as the Interim United States Attorney and nominated Mr. Giordano to be the new Ambassador to Namibia. *Id.* at 569. On March 28, 2025, Ms. Habba was formally sworn in as Interim United States Attorney by Attorney General Bondi. *Id.* On April 2, 2025, the Government tendered its first plea offer to Capt. Perez.

On July 1, 2025, 120 days after March 3, 2025, Ms. Habba's appointment expired pursuant to § 546(c). *Id.* On July 22, 2025, the United States District Court for the District of New Jersey appointed Desiree Grace as the United States Attorney, effective immediately, because Ms. Habba's lawful authority had lapsed. *Id.* On this day, the Government extended Capt. Perez another plea offer still bearing Ms. Habba's signature. Two days later, on July 24, 2025, Ms. Habba was appointed both Special Attorney and First Assistant United States Attorney, and was delegated all of the powers of

the United States Attorney. *Id*. On July 26, 2025, President Trump terminated Desiree Grace's appointment as United States Attorney; however, Ms. Habba did not become Acting United States Attorney because she had been appointed only after the vacancy arose. *Id*. Hence, Ms. Habba was not lawfully acting as the United States Attorney from July 1 to July 24, 2025, or anytime thereafter. *Id*. at 578.

The period of Ms. Habba's unlawful authority directly overlapped with the prosecution of Capt. Perez at its most consequential stages, including all three plea offers extended after Ms. Habba's authority expired. On September 17, 2025, the Government extended its second plea offer, which Capt. Perez rejected. On September 25, 2025, the Grand Jury for the District of New Jersey returned an indictment charging Capt. Perez with (1) attempted enticement and coercion of a minor, in violation of 18 U.S.C. § 2422(b), and (2) attempted transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470. ECF No. 18. The Indictment was filed approximately two months after Ms. Habba's authority became unlawful and yet, the Indictment was signed by Ms. Habba.

On November 26, 2025, Capt. Perez and the Government cross-filed motions: the Government filed an Omnibus Motion *in Limine* and Capt. Perez filed an Omnibus Motion. ECF Nos. 36–37-1, respectively. Section III of Capt. Perez's Omnibus Motion was a Motion for Preservation, which sought to preserve any applicable judicial remedy related to Ms. Habba's unlawful authority—a matter that, at the time, was still pending in the Third Circuit. ECF No. 37-1, at 37–38. *See United States v. Giraud*, 160 F.4th 390 (3d. Cir 2025) (issued December 1, 2025).

On December 5, 2025, the parties cross-filed oppositions to the respective motions. *See* ECF Nos. 39, 41, respectively. The Government's opposition contested, *inter alia*, that Capt. Perez's Motion for Preservation was untimely, without good cause, and therefore waived. ECF

No. 39, at 28–29. On December 8, 2025, Ms. Habba resigned.[2] That same day, Attorney General Bondi issued an order installing three attorneys, acting as an "Executive Office," to fill the vacancy in the United States Attorney's Office for the District of New Jersey.[3] The Executive Office Order was issued pursuant to 28 U.S.C. §§ 509–510, and delegated to each attorney the authority to supervise and execute work in various divisions: (1) Philip Lamparello's prior appointment as Senior Counsel was approved, and he was placed in charge of the Criminal and Special Prosecutions Divisions; (2) Jordan Fox was appointed as Special Attorney and placed in charge of the Civil and Appellate Divisions; and (3) Ari Fontecchio was appointed as Executive Assistant United States Attorney and placed in charge of the Administrative Division.[4]

On December 11, 2025, the parties appeared before the Honorable Christine P. O'Hearn for a status conference to discuss Capt. Perez's intent to supplement his Motion for Preservation in light of the Third Circuit's decision in *United States v. Giraud* rendered ten days prior, and the adjournment of the trial and other pretrial deadlines. *See* ECF No. 44.

## <u>ARGUMENT</u>

### I.    **CAPT. PEREZ'S MOTION FOR PRESERVATION WAS TIMELY AND COMPLIANT WITH RULE 12, AND IS OTHERWISE ENTITLED TO CONSIDERATION FOR GOOD CAUSE SHOWN**

The Government contends that Capt. Perez has "waived" any challenge arising from Ms. Habba's unlawful service as Acting United States Attorney because (1) his Motion for Preservation purportedly did not comply with Rule 12(b)(3), and (2) he allegedly possessed all facts necessary

---

[2] Alina Habba (@alinahabba), X (Dec. 8, 2025, 1:46 PM),
https://x.com/AlinaHabba/status/1998101999024550125?s=20.

[3] Attorney General Pamela Bondi, Office of the Attorney General, Order No. 6510-2025, (Dec. 8, 2025) https://www.justice.gov/opa/media/1420361/dl. [hereinafter "Executive Office Order"].

[4] *Id.*

to raise such a challenge at the time of the Indictment. *See* ECF No. 39, at 28. These assertions misunderstand and misapply the governing law.

Capt. Perez's Motion for Preservation was made in full compliance with Rule 12 because it was filed before the deadline for pretrial motions passed, well before trial, and is otherwise amply supported by good cause. Capt. Perez timely raised the basis for his challenge and expressly moved before this Court to preserve the opportunity to file a motion once the issue became ripe—which it did, four days later. *See* ECF No. 37-1, at 30–31; *see also United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025) [hereinafter *Giraud II*]; *see also United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025) [hereinafter *Giraud I*]. Nothing in Rule 12 prohibits the defendant from preserving his relief in such a manner or otherwise specifies any particular form that a pre-deadline Rule 12 motion must take. Accordingly, Capt. Perez's Motion for Preservation was timely because it provided the Government with ample notice, and no authority suggesting that a preservation request is improper under Federal Rule of Criminal Procedure 12. *See United States v. Desu*, 2020 WL 5630003, at *5 (D.N.J. Sept. 21, 2020) (noting good cause argument raised for the first time on reply was untimely under Rule 12); *id.* at *4 (noting Rule 12's pretrial requirement "'serves a number of purposes, including sparing the court, the witnesses, and the parties the burden and expense of a trial'") (quoting *United States v. O'Brien*, 926 F.3d 57, 82 (2d Cir. 2019)).

Even assuming that Capt. Perez's Motion for Preservation did not independently satisfy Federal Rule of Criminal Procedure 12, this Court should nevertheless consider the motion because it is supported by good cause through three factors. First, there is a legitimate explanation for the alleged untimeliness of the motion. Second, consideration of the instant motion will not prejudice the Government. Lastly, denying consideration of the motion risks a miscarriage of justice and

may undermine public confidence in the judicial system. *See United States v. Sok*, 115 F.4th 251, 264 (3d Cir. 2024). Accordingly, Capt. Perez's motion is entitled to consideration.

### A.  LEGAL STANDARD

"Rule 12 requires that certain 'defenses, objections, and requests [] be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *United States v. Sok*, 115 F.4th 251, 259 (3d Cir. 2024) (quoting Fed. R. Crim. P. 12(b)(3)). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(b)(3).

Good cause is a "flexible" standard committed to the district court's discretion and dependent on the circumstances of the case. *Sok*, 115 F.4th at 263. Courts may consider, among other factors, (1) any legitimate explanation for the timing of the motion, (2) whether consideration will prejudice the Government, and (3) whether refusal to consider the issue would risk a miscarriage of justice or undermine confidence in the judicial system. *Id*. at 264.

### B.  CAPT. PEREZ'S MOTION FOR PRESERVATION WAS TIMELY

Capt. Perez's Motion for Preservation was timely under Federal Rule of Criminal Procedure 12. Capt. Perez filed his Omnibus Motion on November 26, 2025. ECF No. 37-1. This included the Motion for Preservation, which was a request to preserve the opportunity to file a motion for relief based on Ms. Habba's unlawful authority as Acting United States Attorney and Special Attorney when the matter became ripe—that is, after *Giraud II* was decided in the Third Circuit.

The Government's contention that the Motion for Preservation's form and time of filing must result in a "waiver"[5] of any motion challenging the validity of the Indictment based on Ms. Habba's unlawful authority rests on a flawed understanding of Rule 12 and an absence of supporting precedent. At the outset, the Government has failed to cite any precedential authority holding that a motion expressly preserving an issue—filed before trial and within the original scheduling order—fails to satisfy Rule 12 and results in forfeiture of the motion. In the absence of such authority, and where, as here, Capt. Perez adhered to the governing scheduling order, the Government's timeliness argument fails as a matter of law.

Equally important, the Government's reliance on "waiver" jurisprudence ignores the fundamentally different procedural postures in which those cases arise. The cases the Government cited in its opposition involved defendants who waited until after trial and after conviction to raise defects in the indictment that were fully available to them well before the deadline expired. ECF No. 39, at 28; *id*. at 29, n.19. Indeed, this issue typically arises when a defendant files a motion to dismiss his or her indictment after the defendant has been tried *and* convicted. *See, e.g.*, *Sok*, 115 F.4th at 257; *United States v. Desu*, 23 F.4th 224, 232 (3d Cir. 2022); *United States v. Patel*, 2024 WL 3937479, at *1–2 (D.N.J. Aug. 26, 2024); *United States v. Hoffman*, 2025 WL 2581936, slip op. at *2 (D.N.J. Sept. 5, 2025); *United States v. Jones*, 2025 WL 1683474, at *2 (3d Cir. June 16, 2025).

That posture bears no resemblance to the circumstances here. Capt. Perez raised the issue well before trial and through a specifically identified motion designed to preserve judicial

---

[5] In 2014, Rule 12 was amended to remove "waiver" language because it did not align with the requirement that Rule 12(e) entailed, which would be a "determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion." *Sok*, 115 F.4th at 261 (quoting Fed. R. Crim. P. 12, Advisory Committee Note to 2014 Amendment). Under *Sok*, the appropriate terminology is "forfeiture." *See id.* at 260, 265; *see also United States v. Soto*, 794 F.3d 635, 652 (6th Cir. 2015) ("The Advisory Committee's conscious decision to abandon the term 'waiver' makes its intent crystal clear: courts may no longer treat a party's failure to file a timely Rule 12(b)(3) pretrial motion as an intentional relinquishment of a known right.").

consideration of a then-unripe and unprecedented legal question that was pending appeal. Even assuming *arguendo* that the precise form of the Motion for Preservation could be questioned under Rule 12, the Government cannot plausibly equate Capt. Perez's procedural posture with defendants who remained silent through trial and verdict before raising the issue for the first time on appeal.

Moreover, Rule 12 expressly ties timeliness to whether the basis for a motion was "reasonably available" before the deadline expired. *See Patel*, 2024 WL 3937479, at *2; *Desu*, 23 F.4th at 232; Fed. R. Crim. P. 12(b)(3). Again, the basis for challenging the validity of Capt. Perez's Indictment based on Ms. Habba's authority did not exist at the time Capt. Perez filed his Motion for Preservation because the matter was still pending in the Third Circuit. Indeed, *Giraud II* was decided five days after Capt. Perez filed his Motion for Preservation.

Thus, the Government's suggestion that Capt. Perez was merely "holding out for a more favorable legal landscape" is mistaken. *See* ECF No. 39, at 30 n.19. The case it relies upon and quotes from, *United States v. Desu*, underscores the distinction rather than supports the Government's position. The defendant there waited until *after* his jury trial conviction to argue his indictment failed to state an offense based on the Supreme Court decision, *Marinello v. United States*, which was issued seven months *before* he was even indicted. 23 F.4th 224, 232 (3d Cir. 2022) ("Desu did not raise his *Marinello* argument until he filed a post-conviction motion for acquittal, so it was untimely under Rule 12."). The Third Circuit affirmed the District Court's rejection of defendant's argument, noting "Desu waited for months to use an argument that he knew he could make at any time prior to the deadline imposed by Rule 12." *Id*.; *see also Sok*, 115 F.4th at 263 (finding defense counsel failed to "make any argument that the law at issue was *not well-established* at the time of his counsel's misunderstanding").

9

Here, Capt. Perez did the opposite. He raised the issue in compliance with Judge O'Hearn's scheduling order, preserved it before the precedential governing law came down, and ultimately noticed both the Court and the Government *well before* trial. Unlike *Desu*, the decision supplying the legal basis for Capt. Perez's challenge did not predate the Indictment or the motion deadline, and Capt. Perez did not wait for the decision to come down before noticing the Government and the Court of his intent to move for relief on that basis. Indeed, affirmatively requesting preservation is incompatible with the idea of "holding out," which naturally encompasses a kind of concealment and is, evidently, not what happened here. Thus, any argument contending that Capt. Perez waited or held out for more favorable precedent to support his motion is simply inapplicable. *Contra. United States v. Daniels*, 803 F.3d 335, 353 (7th Cir. 2015) (noting defendants could have argued issue as "one of first impression" without benefit of newly issued supporting precedent).

In short, Capt. Perez neither delayed bringing nor forfeited the instant motion. He complied with the Court's scheduling order and preserved the issue well before trial. Rule 12's timeliness requirement is therefore satisfied, and the Government's forfeiture argument should be rejected.

### C.  THERE IS GOOD CAUSE TO CONSIDER CAPT. PEREZ'S MOTION

Even if this Court finds that Capt. Perez's Motion for Preservation was not timely under Rule 12, the motion is nevertheless entitled to consideration because Capt. Perez has demonstrated good cause to excuse any alleged untimeliness. Fed. R. Crim. P. 12(b)(3).

"Good cause 'requires a showing of cause and prejudice.'" *United States v. Webb*, 2024 WL 2134864, at *2 (W.D. Pa. May 13, 2024) (quoting *United States v. Dennis*, 41 F.4th 732, 740 (5th Cir. 2022), cert. denied, 143 S. Ct. 2616 (2023)). The Third Circuit has made clear that Rule 12's good-cause standard is "flexible," fact-specific, and up to the district court's discretion. *Sok*, 115 F.4th at 263–64.

Although the good cause standard contemplates "justifications going to the timeliness of Rule 12(b)(3) arguments," the court can consider other factors that are typically used in "exceptional-circumstances jurisprudence." *See id*. These additional factors provide a more structured framework for an otherwise ambiguous, albeit flexible, good cause standard. Thus, courts may exercise their discretion and assess whether good cause has been established by considering (1) whether the defendant has a legitimate explanation for the timing of the motion; (2) the extent of any prejudice to the Government; and (3) whether declining to consider the issue would result in a "miscarriage of justice or undermine confidence in the judicial system." *See id*. (quoting *United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012)). Consideration of the moving party's motion is warranted where two of the three factors tilt in favor of the defendant. *See United States v. Albertson*, 645 F.3d 191, 195–96 (3d Cir. 2011).

Under this framework, all three factors weigh decisively in Capt. Perez's favor. First, the timing of the Motion for Preservation and now the instant motion was justified because there was no controlling authority suggesting preservation was procedurally improper under Rule 12. Second, consideration would not prejudice the Government because it has had ample time to prepare its rebuttal and the maximum potential consequence would be dismissal without prejudice. Third, declining to consider the issue would undoubtedly undermine public trust in the criminal justice system due to Ms. Habba's direct involvement in charging and investigative decisions at a time when she lacked lawful authority. *See Giraud I*, 795 F. Supp. 3d at 606–07. Accordingly, even assuming that Rule 12 timeliness is still at issue, there is good cause for this Court to consider Capt. Perez's motion.

   i.    **Legitimate Explanations for Alleged Untimeliness**

Capt. Perez has a legitimate and legally justified explanation for the timing and form of his Motion for Preservation: when the motion was filed, *Giraud* was still pending in the Third Circuit. Under Rule 12, good cause exists where "the information supporting the claim arose too late to file a timely Rule 12 motion" and where the defendant offers a colorable, non-negligent explanation for the timing. *Sok*, 115 F.4th at 263–64.

That standard is satisfied here. This is not a case of inadvertence, oversight, or neglect, and does not involve a failure to offer "any colorable explanation" for delay—circumstances the Third Circuit has held as insufficient to establish good cause. *Id*. (quoting *United States v. Rose*, 538 F.3d 175, 184 (3d Cir. 2008)). To the contrary, Capt. Perez affirmatively raised the issue before trial, within the pretrial motion window, and expressly preserved it pending resolution of *Giraud II*. That conduct reflects diligence, not neglect. Moreover, Rule 12's good-cause inquiry is expressly discretionary, and district courts may consider "*any* excuse for the untimeliness" in light of the circumstances presented. *Id.* at 264 (quoting *United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012)) (emphasis added). Hence, the first factor will weigh against a finding of good cause only where the defendant "provide[s] no compelling reason" for the delay. *Andrews*, 681 F.3d at 532; *see United States v. McDonald*, 2024 WL 4814887, at *3 (3d Cir. Nov. 18, 2024) (finding no good cause where defendant fails to offer "any colorable explanation" for untimely motion).

Principally, the basis for the Motion for Preservation and the instant motion was not "reasonably available" at the time it was filed. Before *Giraud II*, no higher court had affirmed the unprecedented defect found in Ms. Habba's authority established in *Giraud I*. Nevertheless, Capt. Perez did not merely lie in wait; rather, he confronted the uncertainty and preserved the issue while the issue remained in flux.

Thus, this case is materially distinct from both *Sok* and *Desu*. In *Sok*, counsel's delay stemmed from a misunderstanding of settled substantive law. *Id*. at 263. The Third Circuit emphasized that counsel failed to "make any argument that the law at issue was *not well-established* at the time of his counsel's misunderstanding." *Id*. (emphasis added). In *Desu*, the defendant remained silent throughout trial and conviction despite the legal basis for challenging the indictment being available for months before the indictment was even returned. 23 F.4th at 232. Here, by contrast, the undersigned was not confused about a "well-established" substantive doctrine: not only is the substantive doctrine that recognized and then affirmed Ms. Habba's disqualification not "well-established" in this Circuit, but also, the procedural theory the Government uses to assert an untimeliness argument is unsupported by any precedent suggesting that the form of preservation was improper under Rule 12.

Most importantly, Rule 12 disfavors strategic silence, *i.e.* when a defendant conceals his intent to initiate a potential claim until favorable precedent comes down. This is rightly so, as that kind of strategic concealment is antithetical to the principles of transparency and judicial economy. That is not the case here. Capt. Perez acted promptly in noticing both the Government and the Court regarding his intention to seek similar relief to that rendered in *United States v. Comey* based on Ms. Habba's unlawful authority, whenever the Third Circuit issued its opinion. *See* ECF No. 37-1, at 37. Capt. Perez has therefore offered numerous colorable explanations for his alleged untimeliness and demonstrated his diligence in seeking to preserve the issue. Accordingly, this Court should find that this factor weighs in favor of good cause.

### ii.    No Prejudice to the Government Due to Substantial Notice

Consideration of the instant motion will not prejudice the Government because it has been aware of Capt. Perez's intent to supplement his Motion for Preservation since at least December

11, 2025, and has therefore had ample time to prepare a rebuttal. In addition, the adjournment of the trial date ensures that the Government will have full and unhurried opportunity to address the issues raised, negating any credible claim of prejudice.

The purpose for Rule 12's timing requirement is to "prevent the 'manifest unfairness' that would result if the 'defendant could sit silently by, take his chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack.'" *United States v. Cardona*, 88 F.4th 69, 76–77 (1st Cir. 2023) (quoting *United States v. Walker*, 665 F.3d 212, 228 (1st Cir. 2011)). "The 'timely presentation of defective indictment claims to the district court allows full development of the factual record and permits the government to appeal any adverse decision prior to trial.'" *Id*. at 77 (quoting *United States v. Crooker*, 688 F.3d 1, 10 (1st Cir. 2012)).

Prejudice to the Government may arise when it is not afforded proper notice. In *Sok*, the Third Circuit recognized that the Government would be prejudiced if it allowed Sok to make his forfeited arguments because "it was not put on notice of Sok's arguments against its theory of inevitable discovery before the District Court, [and] the Government had no opportunity to develop the record with evidence to rebut them." *Id*. Similarly, in *United States v. Wynn*, the court denied defendant's motion for leave to file additional pretrial motions because, in addition to failing to show good cause, he had not even "specified an untimely motion that he wishe[d] to file[.]" 2023 WL 5992371, at *1–2 (W.D. Pa. Sept. 15, 2023).

The circumstances here differ from both *Sok* and *Wynn*. First, *Sok* is flatly incomparable because the Government has been on notice of Capt. Perez's Motion for Preservation *since November 26, 2025*, the date that Capt. Perez filed his Omnibus Motion. Thus, it has had ample time to develop a rebuttal against the instant motion. Second and relatedly, unlike the defendant in *Wynn*, who failed to specify what kind of "pretrial motion" he sought leave to file, Capt. Perez's

14

Motion for Preservation specified the exact basis and theory on which he would be bringing his motion for relief as soon as the issue became ripe. *See* ECF No. 37-1, at 37 (requesting opportunity to file motion invalidating indictment based on Ms. Habba's authority, as was done in *United States v. Comey*). Accordingly, this element should likewise tilt in favor of determining Capt. Perez has demonstrated good cause.

### iii.  Miscarriage of Justice and Public Confidence in Justice System will be Undermined

Lastly, denying consideration of Capt. Perez's motion would undoubtedly risk a miscarriage of justice and erosion of public confidence given the recent disqualification of the United States Attorneys not only in the District of New Jersey, but also in the District of Nevada, the Central District of California, the Eastern District of Virginia, and the Northern District of New York. *See United States v. Garcia*, 2025 WL 2985284, slip op. at \*2 (D. Nev. Oct. 23, 2025) (reaffirming holding that Sigal Chattah was unlawfully appointed as Acting United States Attorney for the District of Nevada); *United States v. Ramirez*, 2025 WL 3019248, at \*20 (C.D. Cal. Oct. 28, 2025) (disqualifying Bilal A. Essayli from serving as Acting United States Attorney for the Central District of California); *cf. United States v. Comey*, 2025 WL 3266932, at \*15 (E.D. Va. Nov. 24, 2025) (invalidating all actions flowing from Lindsey Halligan's unlawful appointment as Interim United States Attorney for the Eastern District of Virginia); *In re Grand Jury Subpoenas to Office of New York State Attorney General*, 2026 WL 60793, at \*12 (N.D.N.Y. Jan. 8, 2026) (quashing subpoenas and disqualifying John A. Sarcone III from further involvement in affected cases). Unlike *Sok*, where the defendant identified no countervailing public-interest considerations, the public interest here is substantial and unmistakable.

On December 1, 2025, the Third Circuit affirmed this Court's order disqualifying Ms. Habba and any line attorneys acting under her supervision from prosecuting and supervising the

affected cases, Mr. Pina's and the Girauds', due to her unlawful authority. *Giraud I*, 795 F. Supp. 3d at 606 ("Any Assistant United States Attorney who prosecutes the Girauds or Mr. Pina under the supervision or authority of Ms. Habba in violation of my Order is similarly subject to disqualification."); *Giraud II*, 160 F.4th at 406–07 (affirming District Court's disqualification order). In light of that ruling, declining to consider a challenge to an indictment approved and supervised by the same unlawfully serving official would directly conflict with the principles those decisions were meant to vindicate. It would signal that unlawful executive authority may be acknowledged in one set of cases yet disregarded in others. *See Garcia*, 2025 WL 2985284, slip op. at *2 ("The public certainly has an interest in a government that turns square corners and complies with the statutory commands of the [Federal Vacancies Reform Act] . . .").

This issue has broad institutional implications for the integrity of federal prosecutions nationwide, and those stakes underscore the necessity of adjudicating Capt. Perez's motion on the merits. . Multiple district courts have used the law and standards set forth in *Giraud I* and *Giraud II* to adjudicate similar challenges to authority. *See, e.g.*, *Ramirez*, 2025 WL 3019248, at *6; *Comey*, 2025 WL 3266932, at *11; *Garcia*, 2025 WL 2985284, at *1; *In re Grand Jury Subpoenas*, 2026 WL 60793, at *12. = Given the number of affected cases and the constitutional dimensions of the defect identified in *Giraud I* and *II*, further appellate review is not merely speculative.[6] Against that backdrop, insulating Capt. Perez's indictment from judicial scrutiny would only heighten uncertainty and erode confidence in the fairness and uniformity of the criminal justice system.

---

[6] Celine Castronuovo, *DOJ Defense of Top Prosecutors Tees Up Debate for Supreme Court*, BLOOMBERG, (Nov. 24, 2025, 7:33 PM) https://news.bloomberglaw.com/us-law-week/doj-defense-of-top-prosecutors-tees-up-debate-for-supreme-court.

Exercising discretion to preserve judicial remedies here would impose no prejudice on the Government. It would, however, serve a compelling public interest by ensuring that criminal prosecutions proceed only under lawful United States authority and that similarly situated defendants are treated consistently under governing law. For these reasons, the third factor weighs decisively in favor of consideration.

## II.    CAPT. PEREZ IS ENTITLED TO DISMISSAL BECAUSE OF MS. HABBA'S DIRECT INVOLVEMENT

Under the framework articulated in *Giraud I*, dismissal of the Indictment without prejudice is warranted here because the dispositive facts that precluded dismissal in Mr. Pina's case are squarely present in Capt. Perez's. Unlike in *Giraud I*, Ms. Habba (1) was unlawfully serving as Interim United States Attorney at the critical charging stage, and (2) participated in—or necessarily exercised supervisory authority over—core prosecutorial decisions concerning the investigation, presentment, and indictment of Capt. Perez. Those two facts were absent in Mr. Pina's case and formed the basis for denying dismissal there. Contrastingly, their presence here compels a different result and, at a minimum, warrants dismissal of the indictment without prejudice.

### A.  LEGAL STANDARD

In *Giraud I*, it was determined that although Ms. Habba's act of signing Mr. Pina's indictment was void, dismissal of his indictment was ultimately "not necessary," 795 F. Supp. 3d 560, 604–05, because "a defect in the government attorney's signature is 'nonjurisdictional' and subject to 'harmless error analysis.'" *Id*. at 605 (quoting *United States v. Easton*, 937 F.2d 160, 162 (5th Cir. 1991)). Under that framework, dismissal is required where the defect affects a defendant's substantial rights. *Cf. id*. at 605 (citing Fed. R. Crim. P. 52(a)). "Thus, to dismiss an indictment, a defendant generally must show that some kind of misconduct prejudiced him with

17

regard to the grand jury proceeding." *Id*. (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988)).

Critically, rejecting dismissal in *Giraud I* turned on the absence of any meaningful overlap between Ms. Habba's unlawful tenure and the critical charging decisions at issue. The review of the grand jury materials regarding Mr. Pina found that, principally, the Government's investigation into Mr. Pina "predated the period during which Ms. Habba was unlawfully serving as the Interim United States Attorney." *Id*. Similarly, the materials revealed that line Assistant United States Attorneys received "supervisory approvals to submit the case to a grand jury before July 1, 2025, when Ms. Habba's service became unlawful." *Id*. at 605–06.

Consequently, it was observed that, based on the lack of overlap between Ms. Habba's unlawful authority and the decision-making regarding the submission of Mr. Pina's case to a grand jury, "[t]here [was] no indication that Ms. Habba had a role in any of [those] decisions, or in the grand jury proceeding other than to ultimately sign the indictment." *Id*. at 606. Ms. Habba's signature was therefore only a "mere technical defect" amounting to harmless error that could be disregarded. *See id*.

### B. MS. HABBA'S INVOLVEMENT DID NOT PREDATE CAPT. PEREZ'S INDICTMENT

Capt. Perez's case presents the opposite factual posture as that of Mr. Pina in *Giraud I*. Here, Ms. Habba's unlawful authority did not merely coincide with a ministerial act; it overlapped with and necessarily encompassed the approval of presentment, the various plea offers made, and the Indictment itself. Consequently, Ms. Habba's unlawful involvement went beyond a "mere technical defect" and resulted in more than just harmless error. Accordingly, Ms. Habba's involvement in Capt. Perez's indictment and prosecution cannot be disregarded because it impacts Capt. Perez's substantial rights, and the Indictment must be dismissed without prejudice.

The temporal rationale used to deny Mr. Pina's motion to dismiss his indictment does not apply here. Capt. Perez was indicted on September 25, 2025. ECF No. 18. This was at least two months *after* Ms. Habba's authority became unlawful. *Giraud I*, 795 F. Supp. 3d at 605–06. This is a patently different scenario than that of Mr. Pina's in *Giraud I*, where approvals to submit Mr. Pina's case to a grand jury occurred *before* July 1, 2024—"the date that Ms. Habba's service became unlawful." *Id*. Mr. Pina was then indicted on July 7, 2024. *Id*. Hence, because the Government's investigation into Mr. Pina "predated the period during which Ms. Habba was unlawfully serving as the Interim United States Attorney," her invalid signature was a technical defect constituting harmless error.

Here, however, the approvals for grand jury presentment and the eventual Indictment occurred well after Ms. Habba's authority became unlawful. Although Capt. Perez does not have the benefit of "internal routing documents" that were used to verify when the supervisory approvals for grand jury presentment of Mr. Pina's case, Capt. Perez's Indictment was secured just one week after Capt. Perez formally rejected the Government's third plea offer—an event that, in practice, precipitates final charging decisions and requires supervisory approval.[7]

These facts therefore negate any contention that approval for presentment occurred *before* Ms. Habba's authority became unlawful. Accordingly, unlike in *Giraud I*, the Government cannot plausibly assert that Ms. Habba had no role in the plea negotiation or charging process. The indictment against Capt. Perez was secured, approved, and returned during a period when the United States Attorney's Office was operating under her unlawful authority and supervision. That overlap alone distinguishes this case from Mr. Pina's in *Giraud I*.

---

[7] The Government provided three plea offers to Capt. Perez. These were dated April 2, 2025, July 22, 2025, and September 12, 2025, respectively. Each plea was tendered under Ms. Habba's tenure, which formally began on March 28, 2025. *See* Procedural History and Statement of Facts, *infra*, at 5.

Courts confronting materially similar circumstances have recognized that such defects warrant dismissal because they go beyond harmless error. *See United States v. Comey*, 2025 WL 3266932, at \*11 (E.D. Va. Nov. 24, 2025) (concluding "all actions flowing from Ms. Halligan's defective appointment, including securing and assigning Mr. Comey's indictment, constitute[d] unlawful exercises of executive power and must be set aside. There is simply 'no alternative course to cure the unconstitutional problem.'") (quoting *United States v. Trump*, 740 F. Supp. 3d 1245, 1303 (S.D. Fla. 2024)). The same reasoning applies here.

### C.  MS. HABBA'S INVOLVEMENT WAS NOT MERELY SPECULATIVE

Judge Brann denied dismissing Mr. Pina's indictment in *Giraud I* because Mr. Pina's arguments concerning the extent of Ms. Habba's involvement in his indictment were "merely speculat[ive]," and therefore her signature on the charging document amounted to harmless error. Such is not the case here. Ms. Habba's involvement in Capt. Perez's prosecution goes beyond a mere signature on the Indictment.

The Government cannot characterize Ms. Habba's role in Capt. Perez's prosecution and Indictment as perfunctory or incidental for three reasons. First, the nature of and stakes involved in this case all but ensured high-level supervisory involvement. Capt. Perez is a decorated United States Air Force officer charged with serious sexual offenses involving minors. Prosecutions of this magnitude and sensitivity are, by their nature, high profile cases that demand the attention and oversight of the United States Attorney for the district. It would strain credulity to suggest that such a case proceeded to indictment without the involvement, or at a minimum awareness, of the head of the Office.

Second, Ms. Habba's immediate creation of a Human Trafficking Task Force[8] coupled with her own public statements confirm that prosecutions involving sexual offenses involving minors were a priority under her tenure. On April 1, 2025, four days after she was sworn in, Ms. Habba announced her creation of a human trafficking task force, that later appeared to have a focus on prosecuting sex crimes against children. For example, on at least *nine* separate occasions, Ms. Habba publicly emphasized the Office's commitment to aggressively prosecuting such cases.[9] For

---

[8]    Alina    Habba    (@alinahabba),    x.com,    (Apr.    1,    2025,    7:22    AM), https://x.com/AlinaHabba/status/1907030882054975597 ("[] There will be zero tolerance for human trafficking in New Jersey. One of my first orders of business was creating a Human Trafficking Task Force and appointing an incredibly talented and passionate Assistant U.S. Attorney to lead it . . .").

[9]

(1) *Union County Teacher Sentenced to 275 Months in Prison for Producing Child Pornography*, United States Attorney's Office District of New Jersey, DOJ (Nov. 24, 2025), https://www.justice.gov/usao-nj/pr/union-county-teacher-sentenced-275-months-prison-producing-child-pornography;

(2) *Brooklyn Man Sentenced to 121 Months in Prison for Conspiracy to Commit Child Sex Trafficking*, United States Attorney's Office District of New Jersey, DOJ (Nov. 24, 2025), https://www.justice.gov/usao-nj/pr/brooklyn-man-sentenced-121-months-prison-conspiracy-commit-child-sex-trafficking;

(3) *Middlesex County Man Charged with Transferring Obscene Material to a Minor*, United States Attorney's Office District of New Jersey, DOJ (Sept. 5, 2025), https://www.justice.gov/usao-nj/pr/middlesex-county-man-charged-transferring-obscene-material-minor;

(4) *Philadelphia County Man Charged with Child Exploitation Offenses*, United States Attorney's Office District of New Jersey, DOJ (Aug. 7, 2025), https://www.justice.gov/usao-nj/pr/philadelphia-county-man-charged-child-exploitation-offenses;

(5) *Sussex County Woman and Texas Man Admit to Exploiting a Child and Producing Child Pornography*, United States Attorney's Office District of New Jersey, DOJ (May 28, 2025), https://www.justice.gov/usao-nj/pr/sussex-county-woman-and-texas-man-admit-exploiting-child-and-producing-child-pornography;

(6) *Justice Department Announces Results of Operation Restore Justice: 205 Child Sex Abuse Offenders Arrested in FBI-Led Nationwide Crackdown, Including 5 in the District of New Jersey*, United States Attorney's Office District of New Jersey, DOJ (May 9, 2025), https://www.justice.gov/usao-nj/pr/justice-department-announces-results-operation-restore-justice-205-child-sex-abuse;

(7) *Guatemalan Man Who Was Unlawfully Residing in the United States Charged with Fraudulently Obtaining Custody of Unaccompanied Alien Children*, United States Attorney's Office District of New Jersey, DOJ (May 12, 2025), https://www.justice.gov/usao-nj/pr/guatemalan-man-who-was-unlawfully-residing-united-states-charged-fraudulently-obtaining;

(8) *Union County Teacher Charged with Possession of Child Pornography and Enticement of a Minor*, United States Attorney's Office District of New Jersey, DOJ (May 1, 2025), https://www.justice.gov/usao-nj/pr/union-county-teacher-charged-possession-child-pornography-and-enticement-minor;

(9) *Ocean County Man Charged with Traveling to a Foreign Place to Engage in Sexual Conduct with a Minor*, United States Attorney's Office District of New Jersey, DOJ (April 16, 2025), https://www.justice.gov/usao-nj/pr/ocean-county-man-charged-traveling-foreign-place-engage-sexual-conduct-minor.

example, on August 7, 2025—about six weeks before Capt. Perez was indicted—Ms. Habba announced that the Office would "continue to prioritize these cases, pursue aggressive prosecutions, and hold predators to account."[10] She made similar statements on May 13 and April 16, 2025, both of which further underscored her intent to deploy the "full power" and resources of the United States Attorney's Office in service of these prosecutions,[11] describing the Office as being "laser focused" on them.[12]

These statements reflect active prosecutorial involvement, devotion to, and oversight of precisely the category of cases that Capt. Perez's instant prosecution belongs. Taken together with the timing of the final plea offer and Indictment, they underscore that Ms. Habba's involvement was neither technical nor perfunctory, but substantive and outcome-determinative. Ms. Habba's involvement therefore cannot be characterized as a mere "technical defect" amounting to a harmless error that can be easily disregarded. Accordingly, Capt. Perez's posture is distinct from Mr. Pina's, thereby warranting dismissal of the Indictment without prejudice, at a minimum.

## III.   THE EXECUTIVE OFFICE STRUCTURE CANNOT RETROACTIVELY CURE MS. HABBA'S DISQUALIFICATION

Despite the clear holding of *Giraud II*, which affirmed Ms. Habba's disqualification, Attorney General Bondi responded to Ms. Habba's December 8, 2025 resignation not by initiating a compliant FVRA or § 546 appointment, but by issuing an order delegating the authority of the United States Attorney to three non-PAS attorneys as an "Executive Office."[13] That maneuver does

---

[10] DOJ, *supra* note 9(4).

[11] DOJ, *supra* note 9(6) ("I will apply the full power of my office to bring these criminals to justice and ensure the safety of every child.").

[12] DOJ, *supra* note 9(9) (noting that the Office "is laser focused on protecting children and ending their exploitation at the hands of abusers").

[13] Bondi, *supra* note 4; *see About The Office*, United States Attorney's Office District of New Jersey, https://www.justice.gov/usao-nj/about (last visited Jan. 8, 2025) ("The U.S. Attorney's Office for the District of New

not supply a lawful United States Attorney and fails for two independent reasons: (1) it replicates the same "U.S. Attorney-by-delegation" structure that was rejected in *Giraud II*, and (2) even if it did not, the 120-day interim period under § 546 has long since expired.

In short, the Executive Office maneuver leaves the Office without a lawfully appointed United States Attorney, Acting United States Attorney, or timeline for the valid appointment and confirmation of one., Because this prosecution and Indictment proceeded under Ms. Habba's unlawful authority, which cannot be retroactively cured by an equally unlawful Executive Office structure, the Indictment must be dismissed.

## A. LEGAL STANDARD

The Appointments Clause requires that United States Attorneys be selected through the PAS process. *Giraud II*, 160 F.4th at 393–94 (citing 28 U.S.C. § 541(a)). In consideration of the PAS process's length, Congress created narrow, time-limited exceptions, such as acting and interim service, as workarounds to allow a vacancy to be temporarily filled while the PAS process plays out. *See id.* at 394. These temporary stopgaps outlined in the FVRA and are "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of' a PAS office." *Id*. (citing § 3347(a)).

Although there are exceptions for statutory provisions that expressly allow for the designation of an officer or employee to temporarily fill a vacancy in an acting capacity, these exceptions do not encompass a general grant of authority to an Executive agency's head that would allow the head to delegate or reassign its statutorily defined duties to or among the agency's officers or employees. *Id*. "In other words, general vesting and delegation statutes cannot be used

---

Jersey is headed by an Executive Office that consists of: Senior Counsel, Philip Lamparello, in charge of the Criminal and Special Prosecutions Divisions; Special Attorney, Jordan Fox, in charge of the Appeals and Civil Divisions; the Executive Assistant U.S. Attorney, Ari Fontecchio, in charge of the Administrative Division; and the Deputy U.S. Attorney, R. David Walk, Jr.").

to 'temporarily authorize an acting official to perform the functions and duties' of a PAS office." *Id*. (citing § 3347(a)).

One such statute that expressly authorizes an alternative means for acting or interim service, 28 U.S.C. § 546(a), allows the Attorney General to *temporarily* fill vacant United States attorneys' offices by appointment. *Id*. at 395 (emphasis added). There are two limitations to the appointment, however. First, the appointee cannot be someone who the Senate previously rejected. Second, and importantly here, the appointment is valid only for 120 days. *Id*. (citing § 546(b)–(c)). Once the 120-day deadline expires, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id*. (citing § 546(d)).

Lastly, aside from the preceding statutes, the Attorney General has broad delegation authority pursuant to 28 U.S.C. § 509. *Id*. Accordingly, the Attorney General may authorize any DOJ employee to perform "any function of the Attorney General," § 510, including appointing special attorneys to assist United States attorneys, § 543(a), and appointing special attorneys or other DOJ officers to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct," § 515(a). *Id*.

## B. THE EXECUTIVE OFFICE CONFIGURATION SUFFERS FROM THE SAME DEFECTS AS MS. HABBA'S APPOINTMENT

The Executive Office does not lawfully provide a United States Attorney or even an Acting United States Attorney for this District; it is simply the same pre-*Giraud* model in new packaging. This structural defect cannot retroactively cure Ms. Habba's unlawful authority that tainted Capt. Perez's Indictment and ongoing prosecution, nor can it lawfully stand on its own for two reasons: (1) the reorganization is tantamount to the "*de facto* U.S. Attorney-by-delegation" model that *Giraud II* expressly rejected, and (2) the appointment and delegation itself are procedurally

defective and illegitimate because § 546's 120-day deadline expired on July 1, 2025. Accordingly, dismissal of Capt. Perez's Indictment is the appropriate remedy.

First, although the Attorney General is vested with "ample discretion" to temporarily fill a vacant United States Attorney office under § 546, that discretion is still subject to FVRA's exclusivity provision. *See Giraud*, 160 F.4th at 403. *Giraud II* makes this clear. There, the Third Circuit found that Attorney General Bondi's efforts to install Ms. Habba as Special Attorney and First Assistant United States Attorney pursuant to §§ 509, 510, and 515 was improper because those were the kind of general vesting and delegation statutes the FVRA prohibits from being used to "'temporarily authorize an acting official to perform the functions and duties' of a PAS office." *Id*. (quoting Oral Arg. Tr. 5, 29). It reasoned that the Government's position, which viewed Ms. Habba's delegated authority as being "'coextensive and coterminous' with that of a U.S. Attorney" and having "no time limit on the performance of those 'functions by delegation,'" as an interpretation so broad that it would "bypass[] the constitutional PAS process entirely . . . [and] eliminate[] the requirements of the FVRA and the U.S. Attorney-specific statute, § 546." *Id*. The Third Circuit further observed that Ms. Habba was subject to the FVRA's requirements because she was an acting official, in that, she performed the functions and duties of the office in a temporary capacity. *See id*. (citing § 3345 and 3347(a)(1)).

Although the Third Circuit noted that "some" limited, dispersed delegation of nonexclusive duties might not create a *de facto* U.S. Attorney subject to the FVRA's exclusivity requirements, that observation only underscores why the Executive Office fails. *Id*. at 406 ("[A]s the District Court noted, our decision that the delegation of all the powers of a U.S. Attorney would run afoul of the FVRA's exclusivity provision does not necessarily mean that *some* delegation by the Attorney General to Habba—or to any First Assistant U.S. Attorney—would not be permissible.")

25

(emphasis added); *see Giraud I*, 795 F. Supp. 3d at 600, n.257 ("I do not express any opinion on the possibility of parceling out these duties to separate individuals or delegating only a clearly limited subset of nonexclusive and delegable duties.").

Here, Attorney General Bondi did not meaningfully narrow, limit, or disperse authority. Instead, she reassigned the same comprehensive portfolio of prosecutorial, supervisory, and administrative powers previously vested in Ms. Habba and split them among three non-PAS attorneys. The Executive Office Order makes no mention of any limitations or reservations of powers, duties, or functions.[14] The United States Attorney's Office for the District of New Jersey's own website confirms that the office is now "headed by an Executive Office" encompassing all five divisions and branch offices.[15] This is the opposite of "some" delegation; it is a sweeping delegation of all the duties and functions once vested in Ms. Habba—those that were deemed noncompliant with the FVRA. *See Giraud II*, 160 F.4th at 406. As a result, the Executive Office suffers from the same structural defects as Ms. Habba's appointment did.

On this point, the Government cannot argue that the Executive Office structure complies with the FVRA. The dispositive defect with the Executive Office here is not the number of appointees or their "dispersed" responsibilities, but the delegation of the full suite of United States Attorney functions among non-PAS officials without any attaching time limit or a valid statutory basis. That model replicates the core problem in *Giraud II*. Attorney General Bondi is again using general vesting and delegation statutes to install attorneys in a vacancy that requires compliance with the PAS process and FVRA requirements. Whether accomplished by one delegate (Ms.

---

[14] *See About The Office*, United States Attorney's Office District of New Jersey, https://www.justice.gov/usao-nj/about (last visited Jan. 8, 2025) ("The U.S. Attorney's Office for the District of New Jersey is headed by an Executive Office that consists of: Senior Counsel, Philip Lamparello, in charge of the Criminal and Special Prosecutions Divisions; Special Attorney, Jordan Fox, in charge of the Appeals and Civil Divisions; the Executive Assistant U.S. Attorney, Ari Fontecchio, in charge of the Administrative Division; and the Deputy U.S. Attorney, R. David Walk, Jr.").

[15] *Id.*

Habba) or three (the Executive Office) is immaterial; what matters is that *all* duties have been delegated, not just "some."

Second, even if this Court finds that the Executive Office configuration is a valid delegation of authority (which it is not), such delegations are now expired under the 120-day deadline established under § 546, which aggregates the terms of different temporary appointees and is not predicated on just one individual reaching a maximum term of 120 days. *Giraud I*, 795 F. Supp. 3d at 579 ("[S]ection 546 allows the Attorney General to make appointments of different individuals, but for an aggregate term of 120 days."). The 120-day aggregated limit is supported by the text of § 546(c)(2) in two forms: (1) grammatically, it does not employ language cabining the deadline to *one* person's appointment, and (2) facially, it establishes that the countdown begins running on the day the Attorney General makes the appointment under § 546(a). *See id*. at 579 ("[T]here is no article, definite or indefinite, to describe the appointment to which section 546(c)(2) refers."); *id*. at 579–80 ("[T]he 120-day clock begins running when the Attorney General first invokes section 546(a) and makes an appointment.").

Section 546(d) provides further support for this interpretation, as it establishes a stopgap measure to ensure the United States Attorney's office remains filled by permitting the district court to make an appointment once the 120-day deadline expires. *Id*. at 580. Hence, "[t]ermination of an appointment before the 120-day deadline does not allow another 120-day term." *Id*. at 582; *see In re Grand Jury Subpoenas to Office of New York State Attorney General*, 2026 WL 60793, at *8 (N.D.N.Y. Jan. 8, 2026) ("Section 546 gives the Attorney General to appoint an Interim U.S. Attorney for up to 120 days."); *see also United States v. Comey*, 2025 WL 3266932, at *6 (E.D. Va. Nov. 24, 2025) (agreeing with Giraud I's reading and explaining that "the appointment power (1) shifts to the district court after the 120-day period and (2) does not revert to the Attorney

27

General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed"). The fact that there is still no one person appointed as United States Attorney does not cure the defect, either. To accept that interpretation would mean that the Attorney General could evade § 546 indefinitely simply by declining to appoint an interim United States Attorney under that provision and instead fill the office via delegation. Congress did not codify a 120-day limit without rhyme or reason.

> Had Congress wanted the 120 day clock to run on a per-appointee basis, it could easily have written the statute to place the bar of subsection(c)(2) first and written it as 'the expiration of 120 days after her appointment.' Congress's choice not to so define the appointment in subsection(c)(2) is meaningful, and the Court will not redraft the text.

*Id*. at 580. Thus, the correct reading, as reflected in *Giraud I, Comey*, and *In re Grand Jury Subpoenas*, is that § 546's clock applies in the aggregate, not to the identity of successive designees. *Id*. at 582; *Comey*, 2025 WL 3266932, at *6; *In re Grand Jury Subpoenas,* 2026 WL 60793, at *8. That limit has expired here: the deadline passed during Ms. Habba's tenure on July 1, 2025, 120 days after Attorney General Bondi first appointed Mr. Giordano as Interim United States Attorney on March 3, 2025. Attorney General Bondi's creation of a new Executive Office structure does not prompt a fresh 120-day term. As such, its appointment and delegation are invalid, and its exercise of authority in Capt. Perez's prosecution is therefore unlawful. *Giraud I*, 795 F. Supp. 3d at 600 ("[O]nce FVRA and position-specific temporary appointments statutes have been exhausted, no one may hold the vacant office in any capacity, and only the department head may perform the exclusive and nondelegable duties of that office. If anyone else performs such duties, those actions are forever void.").

Consequently, dismissal of Capt. Perez's Indictment is warranted. The Executive Office is both structurally and temporally invalid, and its members, including the AUSAs purporting to act under its authority, lack lawful prosecutorial power in this District. These defects are not merely administrative, they are prejudicial. Ms. Habba personally exercised the full panoply of United States Attorney functions—including investigative direction, presentment, and indictment—at a time when she was ineligible to serve in any capacity under the FVRA and § 546. Because those are non-delegable and outcome-determinative decisions, the prejudice is inherent and irrevocable. Capt. Perez was criminally charged by an official who lacked authority to do so, a defect that infects the very existence of the charging instrument, and he continues to be prosecuted by an unlawful and invalid triad; no subsequent reorganization can unwind those decisions or ratify the Indictment that was personally signed by a United States Attorney who lacked lawful authority at the time it was presented and signed. *See id.* at 577 ("'[A]n action taken by a person who is not acting under section 3345, 3346, or 3347,' or the head of the Department, 'in the performance of a function or duty of a vacant office … shall have no force or effect,' and 'may not be ratified.'") (quoting 5 U.S.C. §§ 3348(d)(1), (2)).

Beyond its invalidity, the Executive Office—like Ms. Habba—is involved with Capt. Perez's prosecution. Typically, the front office is routinely briefed on impending trials, litigation strategy, and anticipated trial proof issues, particularly in cases involving sensitive charges or heightened public interest. The Government has offered no indication that this case has been treated differently. To the contrary, the nature of the charges and once-imminent trial date make it implausible that the Executive Office is unaware of, or uninvolved in, decisions concerning the conduct of this prosecution.[16]

---

[16] The conscious decision to continue presenting matters to the grand jury after Judge Brann invalidated Ms. Habba's signature on indictments had to have originated within the Office's senior leadership. Even if there is no documentary

Lastly, Attorney General Bondi's restructuring does not reflect a strategy aimed at curing these defects, either. After *Giraud II*, Attorney General Bondi did not make a compliant FVRA or § 546 appointment or even issue a timeline for one; instead, she created an Executive Office that again reallocated the full suite of United States Attorney powers to non-PAS officials. This gamesmanship represents a continuation of the same deficiencies under a different label, and is the opposite of proceeding in good faith.

In short, the Executive Office cannot serve as a lawful substitute for a properly appointed and confirmed United States Attorney, cannot retroactively sanitize Ms. Habba's unlawful involvement in this prosecution, and cannot justify the continued exercise of federal criminal authority over Capt. Perez. Accordingly, dismissal of the Indictment is warranted.

## IV.    IN-CAMERA REVIEW

Even if this Court were to conclude that dismissal is not warranted despite Ms. Habba's and the Executive Office's direct involvement, Capt. Perez respectfully requests that the Court conduct an in-camera review of the grand jury materials and any internal documents reflecting Ms. Habba's or the Executive Office's supervision, approvals, or decision-making in this prosecution. Such review is not an extraordinary request. Indeed, it is the precise mechanism Judge Brann employed in *Giraud I* to determine whether Ms. Habba's unlawful authority was merely technical or instead infected the charging process that went beyond harmless error or amounted to more than just a "technical defect." *See Giraud I*, 795 F. Supp. 3d at 605–06.

In *Giraud I*, the decision not to dismiss Mr. Pina's indictment came only *after* Judge Brann reviewed grand jury and supervisory materials in-camera, reasoning that Ms. Habba's involvement

---

evidence, there is no logical basis to assume that Ms. Habba played no role in the decision to proceed authorizing grand jury presentments and signing indictments even after Judge Brann invalidated her signature and disqualified her and any Assistant United States Attorney acting under her authority.

predated the period during which her authority became unlawful. *Id*. Similarly, Judge Currie deemed it necessary to conduct an in-camera review to fairly determine the extent to which Ms. Halligan, the then-Acting United States Attorney for the Eastern District of Virginia, had been involved in the grand jury proceedings. *United States v. Comey*, 2025 WL 3266932, at *4 (E.D. Va. Nov. 24, 2025). The ensuing analyses, though different in their findings, were predicated on judicial access to internal prosecutorial records—records uniquely within the Government's possession and unavailable to the defense.

The same necessity is present here. To the extent the Executive Office now exercises front-office authority over this prosecution—whether through briefings on trial posture, changing considerations, or litigation strategy—it stands in the same supervisory position that warranted in-camera review in *Giraud I* and *Comey*. Absent such review, this Court would be forced to resolve the inquiry on an incomplete record, effectively requiring Capt. Perez to prove the extent of Ms. Habba's and the Executive Office's unlawful involvement without access to corroborating materials. In-camera review avoids the potential prejudice this could inflict while still preserving grand jury secrecy, respecting prosecutorial prerogatives, and ensuring that the Court can faithfully apply the harmless error framework articulated in *Giraud I*. Accordingly, at a minimum, a targeted in-camera review is warranted to affirmatively confirm the full scope of Ms. Habba's and the Executive Office's unlawful involvement in Capt. Perez's investigation, presentment, and Indictment.

## V.    DISMISSAL WITH PREJUDICE

Dismissal with prejudice is the only appropriate remedy in light of the Department of Justice's flagrant disregard of the Third Circuit's ruling in *Giraud II*, which is the prevailing law of the land. As extraordinary as it may be, it is one that would prevent further creative maneuvering

aimed at circumventing basic constitutional and statutory requirements at the expense of due process rights.

Federal courts in criminal cases are vested with "supervisory powers" to "implement a remedy" to vindicate "recognized rights" and "deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). One such remedy is "to dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)). Dismissal may be with prejudice. *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254–55 (3d Cir. 2005).

Dismissal with prejudice is warranted where there is "(1) flagrant misbehavior[,] [] (2) substantial prejudice," and "no lesser remedial action is available." *United States v. Bundy*, 968 F.3d 1019, 1023 (9th Cir. 2020). Such a remedy is warranted here.

First, the Government flagrantly violated the FVRA and § 546 in having Ms. Habba authorize, supervise, present, and sign Capt. Perez's Indictment when she had no lawful authority to do so. After the Third Circuit issued *Giraud II*, the Government compounded these violations by reorganizing the Office's leadership rather than complying with the PAS process. This conduct directly contravenes binding precedent and facially satisfies the "flagrant misbehavior" standard.

Second, Capt. Perez has suffered substantial prejudice. His Indictment and ongoing prosecution are inherently defective because they are proceeding without lawful authority. Capt. Perez has not waived his right to a speedy trial, and the delay caused by the Government's unlawful leadership structure—on not one but two occasions—constitutes an impermissible infringement on his due process rights.

Finally, no lesser remedial action is available. Dismissal without prejudice would put him "at a greater disadvantage than [he] would have faced had the government" not violated the FVRA

and § 546 because Capt. Perez is essentially being forced to waive his right to a speedy trial while allowing the Government to correct (or not) its structural violations at leisure. *Bundy*, 968 F.3d at 1043. Dismissal without prejudice would also reward the Government for permitting Ms. Habba's participation in cases where her involvement was not legally authorized.

In short, dismissal without prejudice would validate the very misconduct at issue and embolden continued violations of the rule of law. There is no valid method by which the Government can cure the inherent deficiencies present in this case under its current leadership structure. The only remedy that will vindicate Capt. Perez's rights and deter future violations is dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, Capt. Perez respectfully requests that the Court grant his Motion to Dismiss the Indictment and Disqualify the Government's Counsel with prejudice.

Dated:    January 12, 2026          Respectfully submitted,
          Newark, New Jersey
                                     CALCAGNI & KANEFSKY LLP

                                      */s/ Ray A. Mateo*
                                     Ray A. Mateo, Esq.
                                     Emily Arezzi, Esq.
                                     One Newark Center
                                     1085 Raymond Blvd., 18th Floor
                                     Newark, New Jersey 07102
                                     (862) 392-1796
                                     rmateo@ck-litigation.com
                                     earezzi@ck-litigation.com
                                     *Attorneys for Defendant Gabriel Perez*